**LOCAL 3–98, INTERNATIONAL WOODWORKERS OF AMERICA, AFL–CIO, Plaintiff-Appellee,**

v.

**Raymond J. DONOVAN, Secretary of Labor, Defendant-Appellant.**

**No. 82–4008.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 13, 1982.

Decided July 1, 1983.

Alfred Mollin, Mark C. Rutzick, Dept. of Justice, Washington, D.C., for defendant-appellant.

John W. Cumming, Eureka, Cal., for plaintiff-appellee.

Before FLETCHER and BOOCHEVER, Circuit Judges, and EAST,* District Judge.

FLETCHER, Circuit Judge:

The Secretary of Labor appeals from the district court's judgment invalidating 29 C.F.R. § 92.15(c) (1981). This regulation was promulgated under Title II of the Redwood Park Expansion Act of 1978, Pub.L. No. 95–250, §§ 201–213, 92 Stat. 163, 172–82 (1978).[1] The district court ruled that the regulation was inconsistent with the Act and hence exceeded the Secretary's authority. We have jurisdiction under 28 U.S.C. § 1291 and affirm.

I

Facts

In 1978 Congress voted to expand the Redwood National Park by approximately 50,000 acres. Congress enacted Title II of the Park Expansion Act, the Redwood Employee Protection Programs (REPP), to protect forest industry workers displaced by expansion of the Park. It provides income and benefits for six years and retraining and job relocation expenses for employees who lose their jobs as a result of the expansion of the Park.

Title II states that any layoff of an affected employee[2] between May 31, 1977

---

\* The Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation.

1. Portions of Title II of the Act are not codified. Section references, therefore, are to the Act unless otherwise indicated.

2. Section 201(11) defines an affected employee as

a covered employee who is either totally or partially laid off by an affected employer within a time period beginning on or after May 31, 1977, and ending September 30,

and September 31, 1980 (the "window period"), is conclusively presumed to be attributable to Park expansion.[3] Section 207 of Title II further provides that affected employees are entitled to REPP benefits until September 30, 1984, subject to statutory offsets in income.

Section 202 of Title II authorizes the Secretary of Labor to implement Title II. Formerly, the Secretary automatically awarded REPP benefits to any eligible employees who were laid off in the window period, but who were recalled to work after September 30, 1980, and then again laid off. In June 1981, however, the Secretary promulgated amended regulations, including 29 C.F.R. § 92.15, which require a redetermination of an employee's eligibility for REPP benefits in certain situations. See 46 Fed.Reg. 32, 217 (codified at 29 C.F.R. § 92.12–92.15). Under the new regulations, a claimant laid off in the window period but recalled to work by an affected employer and laid off thereafter loses his conclusive presumption of entitlement to benefits because of the recall. Such an employee must reestablish his eligibility for benefits by showing by a preponderance of the evidence that the second layoff would not have occurred but for the Redwood Park expansion.[4]

Local 3–98 of the International Woodworkers Union filed suit in district court, claiming that under the new regulations more than one thousand people, including many of its members, would be denied REPP benefits to which they were entitled. Local 3–98 asserted that until September, 1984, an employee laid off during the window period should be conclusively presumed to be entitled to benefits at any time he is laid off even after a recall by an affected employer. According to Local 3–98, an employee covered by the new regulation cannot be required, consistent with the Act, to reestablish his or her right to benefits. The Secretary argued to the district court, and argues again here, that the conclusive presumption of entitlement should apply only so long as the employee is unemployed on a layoff that began during the window period. The Secretary interprets section 203 and the new regulations to defeat the presumption of entitlement where an employee was rehired by an affected employer and then laid off outside the window period.

The district court invalidated the new regulation section 92.15(c). The Secretary timely appealed.

## II

### Standard of Review

■■■ Ordinarily, a reviewing court gives considerable deference to the inter-

---

1980, unless extended, as provided in section 203, or is determined by the Secretary to be adversely affected by the expansion of the Redwood National Park.

**3.** Section 203 provides in relevant part:

The total or partial layoff of a covered employee employed by an affected employer during the period beginning May 31, 1977, and ending September 30, 1980, other than for a cause that would disqualify an employee for unemployment compensation, except as provided in section 205, is conclusively presumed to be attributable to the expansion of Redwood National Park: *Provided,* That the Secretary may, for good cause, extend this period for any group of covered employees by no more than one year at a time after September 30, 1980. Any covered employee laid off during that period by an affected employer shall be considered an affected employee at any time said employee is on such layoff within the period ending September 30, 1984, or, if earlier, the end of said employee's period of protection as defined herein.

**4.** The regulation provides that employees are eligible if "laid off under circumstances related to the Park expansion." 29 C.F.R. § 92.-15(a)(3). At the time the district court heard this case, the Secretary had issued a memorandum interpreting section (a)(3) to place the burden of proving eligibility on the claimant. An employee was required to demonstrate conclusively that the layoff would not have occurred "but for" the Park expansion. Moreover, the employee had to prove his eligibility within 15 days of his request for benefits.

In light of the district court's criticism of these standards, the Secretary issued a new memorandum. Under it, an employee had to show by a preponderance of the evidence that Park expansion was the primary cause of the layoff within 30 days of his request for benefits.

In *David v. Donovan,* 698 F.2d 1057 at 1058–59 (9th Cir.1983), however, this court held that an employee need establish only that the layoff was significantly related to the Park expansion in order to be eligible.

pretation of a statute by the agency charged with implementing the statute. *Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965); *Totem Ocean Trailer Express, Inc. v. Federal Maritime Commission,* 662 F.2d 563, 565 (9th Cir.1981). Title II, however, contains a provision that modifies this standard of review. Section 213(f) provides:

> In all cases where two or more constructions of the language of this title would be reasonable, the Secretary shall adopt and apply that construction which is most favorable to employees. The Secretary shall avoid inequities adverse to employees that otherwise would arise from an unduly literal interpretation of the language of this title.

The Secretary argues that this provision does not modify the ordinary standard of review because the effect to be given section 213(f) is itself committed to agency discretion. Section 213(f), the Secretary maintains, quoting *Overton Park v. Volpe,* 401 U.S. 402, 410, 91 S.Ct. 814, 821, 28 L.Ed.2d 136 (1971), is "drawn in such broad terms that in a given case [it provides] no law to apply." In *Overton Park,* the Supreme Court found that the statutory terms "feasible and prudent" established a sufficiently objective standard to allow judicial review of the Secretary of Transportation's determination that there were no "feasible

and prudent" alternatives to a proposed highway site. *Id.* at 411–13, 91 S.Ct. at 821–22. Applying *Overton Park,* we find that section 213(f) provides an easily identifiable, objective standard to review the Secretary's decisions implementing Title II.

Furthermore, we have already elaborated our approach for applying the standard established in section 213(f). In *Lanning v. Marshall,* 650 F.2d 1055 (9th Cir.1981), the court stated that, if there are two reasonable interpretations of language in Title II, under section 213(f) we review to determine whether the Secretary has adopted the one most favorable to employees as a class. If, however, the Secretary offers the only reasonable interpretation of the language, his interpretation is entitled to the usual deference. *Id.* at 1057 n. 4. *See also David v. Donovan,* 698 F.2d 1057 at 1058–59 (9th Cir.1983).

### III

### Validity of the Regulations

■ The Secretary interprets Title II of the Park Expansion Act to require employees laid off during the window period to reestablish their affected status if they return to work for an affected employer and are again laid off after the window period. *See* 29 C.F.R. § 92.15 (1981).[5] To justify

---

5. Section 92.15 provides in pertinent part:

> (a) *Qualifying Layoffs.* A covered employee laid off between October 1, 1980 and September 30, 1984 shall be deemed to be an affected employee if such layoff occurred under one of the following circumstances:
>
> (1) The covered employee suffered a qualifying layoff from an affected employer and the employee returned to work for a known short-term recall from that employer or the length of employment is less than 50% of a seasonal worker's average season (as computed for REPP benefits) and the employee is again laid off; or
>
> (2) The covered employee works for an affected employer on a staggered work schedule, designed to spread available work among employees to prevent total layoffs, during the period beginning May 31, 1977 and ending September 30, 1980 and has continued to work on such schedule beyond September 30, 1980. (An example of a staggered work schedule which is qualifying for this purpose is a week of work and a week of

layoff or any reasonable extension of the principle. An example of a staggered work schedule which is not qualifying for this purpose is the 28 day work cycle as the employees average 40 hours per week.); or

> (3) The covered employee was laid off by an affected employer under circumstances related to the Park expansion.

> . . . . .

> (c) *Eligibility Review After the Effective Date of This Section.* Any covered employee who has remained on a layoff that occurred between May 31, 1977 and September 30, 1980, will continue to be qualified for REPP benefits as a result of that layoff. Notwithstanding § 92.50 of this part, after the effective date of this section, an affected employee receiving REPP benefits based on a layoff occurring after September 30, 1980 shall have the circumstances of that layoff redetermined on the basis of the above criteria. Only those employees whose layoffs are found to be qualifying upon redetermination shall continue to receive REPP benefits.

this interpretation, the Secretary relies on section 203 which provides in pertinent part:

> Any covered employee laid off during [the window] period by an affected employer shall be considered an affected employee at any time said employee is on such layoff within the period ending September 30, 1984 . . . .

The Secretary relies on the language "on such layoff" to argue that section 203 entitles an employee to a presumption of affected status only so long as the employee is on a layoff begun during the window period. Local 3–98 relies on the language "at any time" to argue that a covered employee laid off by an affected employer during the window period is entitled to benefits "at any time" the employee is laid off by an affected employer from May 1977 to September 1984. Although the Secretary's interpretation of the statute and regulations is reasonable, Local 3–98's interpretation is also reasonable, and is, in fact, the interpretation that the Secretary originally followed. Under this interpretation the conclusive presumption arises when a covered employee is laid off during the window period. The employee shall be considered an affected employee at any time that he or she is laid off until September 30, 1984. A resumption of employment both within and without the industry results in offsets to the benefits, which benefits would resume in full upon a subsequent termination of employment prior to September 30, 1984. To be eligible, an employee's window period layoff must be "other than for a cause that would disqualify an employee for employment compensation." Thus, the language stating that a covered employee shall be considered an "affected employee at any time said employee is on *such layoff* within the period ending September 30, 1984 . . ." (emphasis ours) logically may refer to a layoff that would not disqualify one for unemployment compensation.

Because we find each interpretation reasonable, we compare the interpretations to see which favors employees as a class and which avoids inequities. *See* § 213(f); *Lanning,* 650 F.2d at 1057 n. 4. We accept Local 3–98's interpretation for several reasons. First, that interpretation is more advantageous to the employees as a class because it does not require them to reestablish their eligibility every time they are recalled and subsequently laid off. Second, the Secretary's proposed interpretation achieves the anomalous result of affording greater protection to presumptively affected employees (those initially laid off during the window period) who return to work outside the industry (i.e., with a non-affected employer) and are laid off a second time than to presumptively affected employees who have accepted work inside the industry (i.e., with an affected employer). The Secretary admits that employees hired outside the industry would continue to be on layoff for purposes of the Act, but a worker laid off and then hired inside the industry is no longer on layoff. *See* Park Expansion Act §§ 201(12), 207(e). Congress may have intended to encourage displaced workers to find employment outside the timber industry but it certainly did not intend to discriminate against those workers who return to jobs within the industry. Its overriding concern was that displaced workers be compensated for job loss. *See* H.R.Rep. No. 95–581, 95th Cong., 2d Sess. 28, *reprinted in* 1978 U.S.Code Cong. & Ad.News 463, 474. It would be incongruous to give greater protection to workers finding other employment than to workers remaining in the industry, when Congress' intention was to benefit industry workers. We think the two groups of employees should be treated alike. Each group, therefore, should retain a presumptive entitlement to REPP benefits as a result of a window period lay-off. The judgment of the district court invalidating the Secretary's new regulation, 29 C.F.R. § 92.15(c) (1981), is, accordingly, AFFIRMED.

EAST, Senior District Judge, dissenting.

I dissent from the result reached by the majority in this case.